UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

YANDIELLE SMITH and TIFFANY MCKELVY,

Plaintiffs,     COMPLAINT

-against-
22 CIV 640

UNITED STATES OF AMERICA,

Defendant.
-----------------------------------------------------------------------x

Plaintiffs, by their attorneys, Law Office of Gregory P. Mouton, Jr., LLC, respectfully

allege:

## PRELIMINARY STATEMENT, JURISDICTION,
## VENUE, & CONDITIONS PRECEDENT

1.      Yandielle Smith, also known as Yandy Smith, is a social justice activist, social

media influencer with 7.1 million followers, entertainment manager, entrepreneur, and actress who

has actively used her platform to shine a light on injustices and advocate for civil rights reform.

In addition to taking part in highlighting the horrendous conditions at Metropolitan Detention

Center Brooklyn as set forth below, Ms. Smith has also participated in other protests, including

one for Breonna Taylor, where Ms. Smith advocated for Ms. Taylor in 98-degree heat before being

wrongfully arrested.

2.      Tiffany McKelvy is a licensed clinical social worker and therapist in New York

City who is also passionate about civil rights reform and standing up the rights of others.  Ms.

McKelvy is deeply involved in the community through her civil rights activism, as well as working

directly with people have suffered from trauma and abuse.

3.     As set forth more fully herein, Plaintiffs Yandielle Smith and Tiffany McKelvy were protesting deplorable conditions at the Metropolitan Detention Center Brooklyn on February 3, 2019.  The protest was organized after inmates were denied basic services, including heat, hot food, medical services, and prescription drugs, during a polar vortex that resulted in single-digit temperatures in New York.

4.     Although the protesters, including Ms. Smith and Ms. McKelvy, were all peacefully protesting, employees and members of the Bureau of Prisons employed excessive force tactics against them, including physically assaulting them and using law enforcement-only pepper spray that had a Scoville Heat Unit rating of 2,000,000.

5.     The assault left Ms. Smith, among other things, with injuries to her right arm, elbow, and shoulder, as well as an inability to breathe and burning eyes.

6.     In addition to Ms. McKelvy suffering from the effects of pepper spray, she also suffered, among other things, several fractures to her right hand.

7.     The claims herein are brought against Defendant United States of America ("U.S.") pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*)  ("FTCA") and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of agents and employees of the U.S. Government while acting within the scope of their offices and employment, under circumstances where Defendant U.S., if a private person, would be liable to the Plaintiffs in accordance with the laws of the State of New York.

8.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

9.     Plaintiffs have filly complied with the complied with the provisions of 28 U.S.C. § 2675 of the FTCA.

10.     This suit has been timely filed on behalf of Plaintiff Smith in that Ms. Smith served notice of her claim on the Federal Bureau of Prisons, RO Northeast, U.S. Custom House, 7th Floor, 200 Chestnut Street, Philadelphia, PA  19106 on January 22, 2021, by United States Postal Service Priority and Certified Mail, Tracking No. 9402609202121023651173.

11.     On April 27, 2021, the United States Department of Justice, Federal Bureau of Prisons Northeast Regional Office acknowledged receipt of the administrative tort claim submitted on behalf of Ms. Smith.

12.     The United States Department of Justice, Federal Bureau of Prisons Northeast Regional Office denied settlement of Ms. Smith's claim by letter dated September 17, 2021.

13.     This suit has been timely filed on behalf of Plaintiff McKelvy in that Ms. McKelvy served notice of her claim on the Federal Bureau of Prisons, RO Northeast, U.S. Custom House, 7th Floor, 200 Chestnut Street, Philadelphia, PA  19106 on January 22, 2021, by United States Postal Service Priority and Certified Mail, Tracking No. 9402609202121537519303.

14.     On March 26, 2021, the United States Department of Justice, Federal Bureau of Prisons Northeast Regional Office acknowledged receipt of the administrative tort claim submitted on behalf of Ms. McKelvy.

15.     The United States Department of Justice, Federal Bureau of Prisons Northeast Regional Office denied settlement of Ms. McKelvy's claim by letter dated September 17, 2021.

## **PARTIES**

16.     Plaintiff Yandielle Smith is a resident of the State of Georgia.

17.     Plaintiff Tiffany McKelvy is a resident of the State of New York.

18.     Defendant U.S. is sued for Plaintiffs' personal injuries caused by the negligent or wrongful acts or omissions of its employees.  Those employees were acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the State of New York.  *See* 28 U.S.C. § 1346(b).

## **STATEMENT OF FACTS**

19.     The Federal Bureau of Prisons ("BOP") is a U.S. federal law enforcement agency under the Department of Justice responsible for the care, custody, and control of incarcerated individuals.  BOP operates correctional and administrative facilities, including Metropolitan Detention Center, Brooklyn ("MDC Brooklyn").

20.     At all times relevant herein, Eleazar Garcia worked at MDC Brooklyn as a supervisor, correctional officer, employee, and/or agent of Defendant U.S. and BOP.

21.     At all times relevant herein, Garcia was acting within the scope of his employment with BOP and Defendant U.S.

22.     At all times relevant herein, Robert Hines worked at MDC Brooklyn as a supervisor, correctional officer, employee, and/or agent of Defendant U.S. and BOP.

23.     At all times relevant herein, Hines was acting within the scope of his employment with Defendant U.S. and BOP.

24.     At all times relevant herein, John/Jane Doe # 1 - 25 worked at MDC Brooklyn as supervisors, correctional officers, employees, and/or agents with Defendant U.S. and BOP.

25.     At all times relevant herein, John/Jane Doe # 1 - 25 were acting within the scope of their employment with Defendant U.S. and BOP.

26.     The names John/Jane Doe # 1 - 25 are fictitious, their true names being unknown to Plaintiffs at this time.

27.     Garcia, Hines, and John/Jane Doe # 1 - 25 were direct participants in the wrongful acts and omissions alleged herein.

28.     As BOP employees, Garcia, Hines, and John/Jane Doe # 1 – 25 qualify as investigative or law enforcement officers for purposes of 28 U.S.C. § 2680(h). *McGowan v. United States*, 825 F.3d 118, 127 n. 5(2d Cir. 2016).

29.     Per the Department of Justice,

> MDC Brooklyn is the largest federal Metropolitan Detention Center in the country and houses approximately 1,700 male inmates in its West Building and approximately 40 female inmates in its East Building.  When the Special Housing Unit (SHU) in the West Building is at capacity, MDC will house additional male SHU inmates in the East Building.  The institution's mission is to house federal inmates from the New York City metropolitan area who are processing through the federal judicial system.  As an administrative security facility, MDC Brooklyn houses inmates at all security levels, sometimes including high-profile inmates with a variety of criminal histories, including terrorism, organized crime, and drug smuggling.  Generally, MDC Brooklyn houses inmates on a short-term basis, averaging 120 to 180 days.  After inmates are convicted and sentenced, the BOP assigns them to one of its long-term correctional facilities. MDC Brooklyn's West Building houses male inmates in 18 housing units on 6 floors.  The two units on the top floor are SHUs, which house inmates who are either on administrative detention or in disciplinary segregation.  The East Building houses female inmates in one housing unit on one floor, and, as stated above, also houses male inmates in one additional

SHU on another floor.  The two buildings are connected by an underground tunnel, which MDC Brooklyn staff call "the link."

30.     Around Martin Luther King, Jr.'s birthday that year, temperatures plummeted into the single digits causing the West Building to feel like a freezer.  Inmates reported warming themselves by heating cans of water with contraband lighters and passing them around.  "Anthony Sanon, the head of the local chapter of the correction officers union, described workers in coats and gloves trying to keep order in the cold," describing the situation as "unbearable."[1]

31.     In late January 2019, a severe cold wave caused by a weakened jet stream around the Arctic polar vortex hit New York and other parts of the USA and Canada, killing at least 22 people.  The cold wave came after a winter storm dumped up to thirteen inches of snow in some regions from January 27 – 29, resulting in some of the coldest temperatures in over 20 years in the affected areas.

32.     On January 27, 2019, an electrical panel that supplied power to MDC Brooklyn's West Building exploded.

33.     The approximately 1,700 inmates in West Building were placed on lockdown,[2] unable to leave their cells for up to 23 hours a day.  Inmates were refused social and legal visits.[3] Inmates began calling lawyers, reporting freezing conditions at MDC Brooklyn and the denial of basic services such as medical care and prescription medication.

---

[1] Annie Correal and Joseph Goldstein, *'It's Cold as Hell': Inside a Brooklyn Jail's Weeklong Collapse*, N.Y. TIMES, Feb. 9, 2019, https://www.nytimes.com/2019/02/09/nyregion/brooklyn-jail-no-heat-inmates.html.

[2] Amy B. Wang, *Protesters swarm Brooklyn jail that endured polar vortex with no heat*, WASH. POST, Feb. 3, 2019, https://www.washingtonpost.com/nation/2019/02/03/protesters-swarm-dark-freezing-brooklyn-jail-that-endured-polar-vortex-with-no-heat/.

[3] Craig McCarthy, *Feds confirm heating problems, no backup plan, at Brooklyn detention center*, N.Y. POST, Sept. 26 2019, https://nypost.com/2019/09/26/feds-confirm-heating-problems-no-backup-plan-at-brooklyn-detention-center/.

34.     Union officials reported that MDC Brooklyn's warden failed to set up an emergency command center or give staff instructions other than to keep inmates on lockdown.[4] Simple measures such as providing extra blankets to inmates were ignored.[5]

35.     Deirdre von Dornum, the Attorney-in-Charge of the Federal Defenders for the Eastern District of New York, obtained a court order to enter the detention center after requests for action to MDC Brooklyn's warden received dismissive replies.  She found the building West Building lit by dim emergency lights, cells in pitch-black darkness, and the rancid smell of non-working toilets pervading the building.[6]

36.     Ms. von Dornum observed that the common areas of the prison, areas inmates were being prevented from entering, had bearable temperatures.  However, when she approached some of the cells, she was hit by gusts of cold air, and observed inmates wrapped in everything they had.  Inmates complained about the freezing cold; no hot meals; no lights; brackish water that ran from the taps; and being denied medical care and prescription medication.[7,8]

37.     Lawmakers also toured MDC Brooklyn, calling the conditions unacceptable and accusing officials of not understanding the situation's urgency.

38.     Rep. Nydia M. Velázquez tweeted, "After visiting MDC again today it is clear the officials there have disregarded the basic human rights of inmates."[9]

---

[4] Correal, *supra* note 1.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Wang, *supra* note 2.
[9] *Id.*

39.     Rep. Jerrold Nadler toured the jail before tweeting that officials at MDC Brooklyn "have been callously placing the health & safety of inmates at [MDC Brooklyn] at risk."[10]

40.     The reports from inmates, lawmakers, and attorneys rallied protesters who began gathering outside of MDC Brooklyn to protest the inhumane conditions in which inmates were left to suffer.

41.     One such protest was held on February 3, 2019.  Ms. Smith and Ms. McKelvy were both present that day, rallying with other protesters in a bid to stop the injustices that were occurring at MDC Brooklyn.  These protesters, including Ms. Smith and Ms. McKelvy, sought to shine a spotlight on what was happening at MDC Brooklyn, obtain answers from federal officials, and spur immediate results in the inmates' conditions at MDC Brooklyn.

42.     A mother of one of the inmates being held in MDC Brooklyn began speaking to her son through a loudspeaker.  From behind the barred windows, he yelled down to her that he loved her, and she told him that she was there for him.  She asked if he had heat, to which he replied no.

43.     The mother, determined to get answers for her son, peacefully entered the lobby of MDC Brooklyn to speak with corrections officials and officers inside the building.  She was accompanied by other protesters, including Ms. Smith and Ms. McKelvy, as well as numerous members of the media.

44.     As questions were being asked of officials inside of MDC Brooklyn's lobby, other correctional officers, including Garcia, Hines, and John/Jane Doe # 1 - 25, entered the lobby.  The correctional officers inside the lobby began attacking the protesters, who were not being violent,

---

[10] *Id.*

causing any property destruction, or attempting to enter the secured portions of the detention center in any way.

45.     Without warning, correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, attacked Ms. Smith and McKelvy, striking, pushing, shoving, and deploying law-enforcement grade pepper spray on the protesting civilians.

46.     Correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, struck and pepper-sprayed Ms. Smith, causing her pain, swelling, and bruising to her right arm and elbow. The pepper spray caused Ms. Smith, among other things, difficulty breathing, burning eyes, burning skin, coughing, wheezing, shortness of breath, inability to breathe properly, burning throat, chest pain, gagging, runny nose, panic, difficulty speaking, emotional distress, blurred vision, and watery eyes.  A pepper spray can was also thrown at her, and she was thrown to the ground by the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 - 25 causing her to sustain a strain to her right shoulder.

47.     Ms. McKelvy was also assaulted, battered, and thrown to the ground, causing her to suffer multiple fractures to her right hand, as well as pain to her right shoulder, wrist, and knee. Ms. McKelvy's eyes and lungs also were affected by the pepper spray, and she experienced burning eyes, burning skin, coughing, shortness of breath, and panic as a result.

48.     The attack caused both Ms. Smith and Ms. McKelvy to suffer mental anguish, fear, anxiety, embarrassment, and humiliation.

49.     One of the cans recovered from the attack was a "SABRE Red" formulation. SABRE – Security Equipment Corp. advertises that

> [t]he one correct indicator of pepper spray potency, as recognized by the EPA & US Federal Government, is **Major Capsaicinoids (MC)**. MC represents the strength of the entire formulation within your pepper spray. Typical sprays range from 0.18 to 1.33% MC. The higher the MC of the pepper spray the greater the potency. Sprays with higher MC are more effective as well. A good example, Gasoline, is typically 87, 89 or 91 Octane. The higher gasoline's octane rating, the greater the fuels performance.  Proof, another example, is the measure of liquor strength. The higher the proof, the stronger the liquor.[11]

50.     The "SABRE Red" pepper spray was no typical spray, containing an even higher level of Major Capsaicinoids at 1.38% and a Scoville Heat Unit rating of 2,000,000.

51.     The Second Circuit has recognized that the use of pepper spray in such circumstances constitutes excessive force, stating "[u]nquestionably, infliction of pepper spray on a[ person] has a variety of incapacitating and painful  effects, and, as such, its use constitutes a significant degree of force.  Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against a[ person] who is complying with police commands or otherwise poses no immediate threat to [an] officer." *Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir. 2010) (citations omitted).  These effects "include (1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging sensation in the throat, and (3) immediate burning sensations to the mucous

---

[11] SABRE – Security Equipment Corp., *Pepper Spray Strength: How Hot Is It Really?*, Dec. 6, 2011, https://www.sabrered.com/blog/pepper-spray-strength-how-hot-it-really.

membranes, skin and inside the nose and mouth." *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2011).

52.     Following their attack on Ms. Smith and Ms. McKelvy, the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, neither offered nor provided any medical assistance, nor did they request any on Plaintiffs' behalf.

53.     The use of force by the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, was excessive, abusive, and grossly disproportionate.

54.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, lacked any form of justifiable reason to use such force against Plaintiffs as Plaintiffs did not pose a danger to the life of anyone, and they were not a danger to cause serious physical injury to any person.

55.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, were personally involved in the wrongful acts and omissions herein, including failing to timely intervene to prevent or stop the attack and failing to provide or seek adequate medical attention for Plaintiffs.

**FIRST CAUSE OF ACTION**
*Assault*

56.     Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

57.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, intentionally acted to place Plaintiffs in apprehension of imminent harmful or offensive bodily contact.

58.     Plaintiffs suffered apprehension of imminent harmful or offensive bodily contact.

59.     As a direct and proximate cause of the foregoing, Plaintiffs have, *inter alia*, suffered pain, mental anguish, and bodily injury.

60.     Under the FTCA, Defendant U.S. is liable for these actions or omissions.

### SECOND CAUSE OF ACTION
***Battery***

61.     Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

62.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, intended to make bodily contact with Plaintiffs.

63.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, made bodily contact with Plaintiffs.

64.     Consequently, Plaintiffs suffered bodily contact which was harmful, offensive, and without Plaintiffs' consent.

65.     As a direct and proximate cause of the foregoing, Plaintiffs have, *inter alia*, suffered pain, mental anguish, and bodily injury.

66.     Under the FTCA, Defendant U.S. is liable for these actions or omissions.

### THIRD CAUSE OF ACTION
***Intentional Infliction of Emotional Distress***

67.     Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

68.     The foregoing intentional actions constitute extreme and outrageous conduct in that Plaintiffs were, *inter alia*, struck, pushed, shoved, and had law-enforcement grade pepper spray on them for protesting the deplorable conditions and MDC Brooklyn.  No civilized society would deem the conditions at MDC Brooklyn acceptable.  Nor would any civilized society deem it acceptable, and nothing short of extreme and outrageous, for government employees, including

the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, herein to brutally attack individuals, including Plaintiffs, who would shed light on and protest such conditions.

69.    The actions of the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, were intended to cause, or were done with disregard of a substantial probability of causing, severe emotional distress.

70.    Plaintiffs were caused to suffer, *inter alia*, severe depression, mental anguish, anxiety, panic, and emotional distress, all of which was directly and proximately caused by the actions of the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25.

71.    Under the FTCA, Defendant U.S. is liable for these actions or omissions.

**FOURTH CAUSE OF ACTION**
***Negligence***

72.    Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

73.    Alternatively, to the extent that they did not take part in the foregoing intentional acts, the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, failed intervene and to take any steps to protect Plaintiffs.

74.    As a result of the foregoing, Plaintiffs were caused to suffer, *inter alia*, pain, mental anguish, and bodily injury.

75.    The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, had a duty under state and federal law to both intervene and take steps to protect Plaintiffs from the wrongful intentional acts of other investigative or law enforcement officers; in failing to safeguard Plaintiffs who were on the premises of MDC Brooklyn; and in failing to neither offer, arrange for, nor provide any medical assistance to Plaintiffs.

76.     Plaintiffs' injuries were the result of the negligent, careless, reckless, and wanton acts of the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25.

77.     As a direct and proximate cause of the foregoing, Plaintiffs have, *inter alia*, suffered pain, mental anguish, and bodily injury.

78.     Under the FTCA, Defendant U.S. is liable for these actions or omissions.

### FIFTH CAUSE OF ACTION
### *Negligent Supervision*

79.    Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

80.    The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, were supervisors, co-employees, and/or worked together at MDC Brooklyn at all times relevant herein.

81.    Alternatively, to the extent that they did not take part in the foregoing intentional acts, the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, failed to properly supervise those individuals who took part in the foregoing intentional acts.

82.    The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, were negligent in that they failed to ensure that their co-employees were provided proper supervision.

83.    Despite knowing that their subordinates and/or co-employees were negligent, the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, took no steps to rectify their subordinates' and/or co-employees' actions.

84.    As a result of the foregoing, Plaintiffs were caused to suffer severe personal injuries.

85.    Said injuries were the result of the negligent, careless, reckless, and wanton acts of the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, their agents, servants, or employees.

86.     As a direct and proximate cause of the foregoing, Plaintiffs have, *inter alia*, suffered pain, mental anguish, and bodily injury.

87.   Under the FTCA, Defendant U.S. is liable for these actions or omissions.

## SIXTH CAUSE OF ACTION
### *Negligent Infliction of Emotional Distress*

88.     Plaintiffs repeat and re-allege each and every allegation as if fully set forth herein.

89.     Alternatively, to the extent that they did not take part in the foregoing intentional acts, the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, failed intervene and to take any steps to protect Plaintiffs.

90.     As a result of the foregoing, Plaintiffs were caused to suffer, *inter alia*, pain, mental anguish, and bodily injury.

91.     The correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25, had a duty under state and federal law to both intervene and take steps to protect Plaintiffs from the wrongful intentional acts of other investigative or law enforcement officers; in failing to safeguard Plaintiffs who were on the premises of MDC Brooklyn; and in failing to neither offer, arrange for, nor provide any medical assistance to Plaintiffs

92.     The breach of that duty unreasonably endangered the safety of Plaintiffs.

93.     Plaintiffs were caused to suffer, *inter alia*, severe depression, mental anguish, anxiety, panic, and emotional distress, all of which was directly and proximately caused by the negligence of the correctional officers, including Garcia, Hines, and John/Jane Doe # 1 – 25.

94.     Under the FTCA, Defendant U.S. is liable for these actions or omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

(a)     on each cause of action, compensatory damages;

(b)     the costs and disbursements of this action; and

(c)     such other and further relief as this Court deems just and proper.


Dated:  New York, New York
        February 3, 2021

                    By:     /s/
                            Gregory Paul Mouton Jr., Esq.
                            Law Office of Gregory P. Mouton, Jr., LLC
                            *Attorneys for Plaintiffs*
                            1441 Broadway, 6th Floor
                            New York, NY  10018
                            Phone & Fax: (646) 706-7481

22 CIV 640

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YANDIELLE SMITH and TIFFANY MCKELVY,

Plaintiffs,

-against-

UNITED STATES OF AMERICA,

Defendant.

---

COMPLAINT

---

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC | 1441 Broadway, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481